Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with some minor modification.
 ***********
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to misjoinder or nonjoinder of the parties.
4. An employee-employer relationship existed between plaintiff and defendant-employer at all relevant times.
5. Plaintiff sustained an injury by accident on 26 February 1998.
6. Plaintiff's average weekly wage is $345.83, yielding a compensation rate of $230.57.
7. The parties stipulated into evidence, without need for further authentication or verification, a packet of plaintiff's medical records.
8. During oral arguments before the Full Commission, the parties stipulated that plaintiff returned to work on 18 October 1999 and is entitled to no further compensation thereafter.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. Plaintiff is a Hispanic male who does not speak English. He was 48 years old on the date of the hearing before the Deputy Commissioner. On 26 February 1998, plaintiff had been employed with defendant-employer for approximately one year painting the interior and exterior of houses. On that date, plaintiff was painting the exterior of a house while standing on a 24-foot ladder. As plaintiff attempted to open a window which was stuck, he lost his balance and fell approximately 20 feet, landing on his back on a concrete floor.
2. Plaintiff felt immediate and severe pain in his shoulder, head, chest and back and was taken to the hospital by ambulance. At Mercy Hospital plaintiff was treated for injuries to his shoulders and back.
3. On 26 February 1998, plaintiff sustained an injury by accident arising in the course of his employment with defendant-employer, to wit, injury to his shoulder and back.
4. Defendant-employer did not authorize further medical treatment for plaintiff until 6 August 1998. During this time plaintiff was forced to continue working although he was in pain.
5. Defendant-employer filed an I.C. Form 60, Employer's Admission of Employee's Right to Compensation, dated 22 September 1998, admitting that plaintiff's 26 February 1998 left shoulder injury was compensable.
6. On 6 August 1998, plaintiff presented to Dr. Patrick Connor, an orthopedic surgeon at Miller Orthopedic Clinic, for bilateral shoulder pain, the left greater than the right, and low back pain. Plaintiff was released to return to work with the restrictions of no lifting over 20 pounds, no pulling greater than ten pounds and no overhead use of the left extremity. At that time, Dr. Connor also requested that plaintiff be accompanied by an interpreter at each visit.
7. On 15 September 1998, Dr. Conner performed an EUA, left shoulder arthroscopy, debridement, and repair of SLAP lesion, debridement of rotator interval lesion, open subacromial decompression and modified Weaver-Dunn procedure with CA ligament transfer. Thereafter, Dr. Connor kept plaintiff out of work until 25 September 1998 when he was released to return to work with his arm in a sling and no use of the left extremity.
8. On 8 April 1999, Dr. Connor released plaintiff from his care and rated plaintiff with a 15% permanent partial disability of his left shoulder and a permanent work restriction of no overhead activities greater than ten pounds.
9. At Mercy Hospital on the date of plaintiff's compensable injury and throughout his treatment with Dr. Connor, plaintiff experienced and continued to complain of back pain. However, defendants refused to authorize treatment for plaintiff's back and refused to either admit or deny plaintiff's back claim.
10. On 17 February 1999, defendants scheduled an appointment for plaintiff with Dr. David Dupuy, who is of the opinion that plaintiff retains a 3% permanent partial impairment of the back based upon mild disc degeneration.
11. On 17 May 1999, plaintiff was seen by Dr. Sami Oweida for an independent medical evaluation requested by defendants. Dr. Oweida rated plaintiff with a 20% permanent partial impairment to his left shoulder.
12. On 14 June 1999, plaintiff presented to Dr. Joseph Estwanik for an independent medical evaluation at the request of plaintiff. Dr. Estwanik was of the opinion that plaintiff retained a 20% permanent partial disability to his left shoulder, a 5% permanent partial disability to his back and should continue with the permanent restrictions given to him by Dr. Connor.
13. Even though plaintiff's claim was accepted, defendants have failed and refused to authorize or provide an interpreter for plaintiff's medical and physical therapy appointments. As a result, plaintiff was forced to arrange for his own interpreters to assist with his medical treatment.
14. Plaintiff worked continuously from 10 March 1998 through 14 September 1998. He received temporary total disability benefits of $266.68 based upon an average weekly wage of $400.00 from 15 September 1998 through and including 6 October 1998. Plaintiff worked from 7 October 1998 through 21 December 1998. Plaintiff stopped working because he was unable to complete his assignment due to pain and because no jobs adequately fitting his limitations were made available to him. Plaintiff received temporary total disability benefits from 21 December 1998 through 15 December 1999.
15. For the period from 15 September 1998 through 6 October 1998 and the period from 21 December 1998 through 31 August 1999, plaintiff received compensation based upon an erroneous average weekly wage of $400.00 which yields a compensation rate of $266.68. Plaintiff's correct average weekly wage is $345.83, yielding a compensation rate of $230.57. Plaintiff was overpaid a total of $1,062.72 during this period. For the period from 1 September 1999 through 15 December 1999, plaintiff received compensation at the correct compensation rate of $230.57.
16. Plaintiff returned to work with defendant-employer on 18 October 1999 earning the same wages as prior to his compensable injury. Plaintiff was paid temporary total compensation totaling $1959.85 during the period between 18 October 1999, when he returned to work, and 15 December 1999, when temporary total compensation payments ended.
17. From 15 September 1998 through 6 October 1998 and from 21 December 1998 through 17 October 1999, plaintiff was disabled and incapable of earning the same wages which he was earning at the time of his compensable injury. As a direct and proximate result of his compensable injury, plaintiff was unable to engage in physical activities required by his former job or any other job during this period. It appears from the evidence that plaintiff has been compensated for this time out of work. Indeed, based on an erroneous calculation of average weekly wage it appears that plaintiff was overpaid during this time in the amount of $1,062.72.
18. Plaintiff has reached maximum medical improvement of his left shoulder and back and retains a 20% permanent partial impairment of his left arm and a 5% permanent partial impairment of the back as a direct and proximate result of his 26 February 1998 compensable injury.
 ***********
Based on the foregoing stipulations and findings of fact the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. On 26 February 1998, plaintiff sustained an injury by accident arising out of and in the course and scope of his employment with defendant-employer, to wit, injury to his back and left shoulder. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of his compensable injury, plaintiff was totally disabled and incapable of earning wages in any employment from 15 September 1998 through 6 October 1998 and from 21 December 1998 through and including 17 October 1999. Plaintiff has been paid compensation for this period. N.C. Gen. Stat. § 97-29.
3. Plaintiff was overpaid a total of $1,062.72 based upon an erroneous calculation of his average weekly wage and defendants are entitled to a credit in that amount. Plaintiff was also overpaid a total of $1,959.85 for temporary total disability payments from 18 October 1999 through and including 15 December 1999 and defendants are entitled to a credit in that amount.
4. As a direct and proximate result of his compensable injury on 26 February 1998, plaintiff is entitled to 15 weeks of compensation at the rate of $230.57 per week for the 5% permanent partial impairment of his back. N.C. Gen. Stat. § 97-31(23).
5. As a result of his 26 February 1998 compensable injury, plaintiff is entitled to 48 weeks of compensation at the rate of $230.57 per week for the 20% permanent partial impairment of his left arm. N.C. Gen. Stat. § 97-31(13).
6. To the extent the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendant-employer shall pay all medical expenses incurred by plaintiff as a result of his compensable injury, to wit, injury to his back and left shoulder. Included in these expenses is the payment for the necessary services of an interpreter to accompany plaintiff to his medical and physical therapy appointments if a bilingual rehabilitation nurse is not provided by defendants. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. For his permanent partial disability, defendants shall pay plaintiff compensation at the rate of $230.57 per week for a total of 63 weeks. This amount shall be subject to a credit in the amount of $3,022.57. All such compensation shall be subject to a reasonable attorney's fee approved in Paragraph 2.
2. A reasonable attorney's fee of 25% of the compensation due under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury, including the services of an interpreter to accompany him to his medical and physical therapy appointments and defendants shall provide an interpreter for that purpose in the future. In the alternative, defendants shall provide a bilingual rehabilitation nurse to accompany plaintiff to medical and physical therapy appointments.
4. Defendants shall bear the costs.
This the ___ day of August 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/________________ BERNADINE BALLANCE COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER
LKM/mhb